## CHARLES H. RAND vs. CITY OF WORCESTER.

The St. of 1864, c. 120, which empowered towns and cities to raise and apply money for the purpose of procuring their quotas of volunteers for the military service under certain calls of the President, was permissive merely, and authorized each town or city to use full discretion whether to apply it by way of bounties or otherwise, and on what conditions, and to what amount, subject only to the limitation in the proviso of the statute, that the amount should not exceed one hundred and twenty-five dollars for each such volunteer.

In an action against a city by a volunteer in the military service, credited on its quota under the call of the President of July 18, 1864, for the amount of a bounty which at the time of his enlistment was offered by the city, under the St. of 1864, c. 120, to each volunteer who should enlist as a part of its quota under that call, except in "the companies being raised" there "for coast defence," without specifying such companies, the fact that the order of the governor for raising the company in which the plaintiff enlisted did not mention that it was to be raised for coast defence, while there was such mention in the orders for raising two other companies which were recruiting there at the time, is not conclusive evidence that the plaintiff's company was not raised for coast defence, and evidence is admissible of all the facts which tend to show what companies were embraced in the terms of the exception.

CONTRACT for one hundred and twenty-five dollars alleged to be due to the plaintiff under a vote of the common council of Worcester passed on August 8, 1864, as follows: " Ordered, that the mayor be, and he is hereby, authorized and empowered to offer a bounty of one hundred and twenty-five dollars to each volunteer who may hereafter enlist as a part of the quota of this city, in the military service, under the call of the President dated July 18, 1864, the same to be paid as soon as satisfactory evidence is furnished that such volunteer has been mustered in and duly credited to the quota of the city; *provided,* that no bounty shall be offered or paid to persons who have [enlisted] or may enlist in the companies now being raised for one year's service for coast defence." The answer alleged that the plaintiff's enlistment was in one of the companies included in this proviso.

At the trial in the superior court, before *Morton*, J., there was evidence that at the time of this vote there were, among other military organizations, three companies recruiting in Worcester, under orders from the governor through the adjutant general, dated respectively August 3, August 5, and August 6 ; that the

order of August 3 authorized Captain George A. Perry, without any reservation or proviso, "to recruit a company of heavy artillery for one year's service, said company, when recruited, to be attached to the First Battalion Heavy Artillery, Mass. Vols." while the orders in the two other cases gave authority to Captains Fayerweather and Bemis respectively to raise companies for one year's service "for coast defence, subject, however, to the proviso that they should be accepted, if, at the time when they should be offered for muster, the number of such companies should not be complete;" that the plaintiff, on August 10, enlisted into Captain Perry's company (which was raised under the President's call of July 18, 1864); and that on August 16 he was mustered into service and credited to the quota of Worcester.

The plaintiff contended that the vote of the common council was in itself a sufficient offer of the bounty by the city, but also introduced, under objection, oral evidence of certain acts and declarations of the mayor, tending to show that he exercised the power which the vote authorized. And he further introduced evidence of his written demand upon the city, July 11, 1865, for the bounty, and the official denial, shortly afterwards, by the mayor, in behalf of the city, that it was due to him.

The defendants offered to show that a battalion of volunteers had for some time previous to the plaintiff's enlistment been defending the coast at Fort Warren in Boston harbor, and that in the spring of 1864 part of them were ordered to active operations at the seat of war in Virginia, and their place in the battalion was supplied by men enlisted for only ninety days' service, whose terms were expiring about August 1; but the judge excluded the evidence, and also excluded the testimony of John A. Andrew, who was governor of the Commonwealth in 1864, to the effect that just before August 1 he called the attention of the commander of the United States military department in which Massachusetts was then included to the fact that the forts on the coast of the state were about to be left destitute of garrisons, and in reply was requested to raise fourteen companies, including two of heavy artillery, to take the

places in the forts of the troops whose terms were about to expire, and that he designed the company of Captain Perry to be raised as one of the two thus requested, and that it was in fact used to garrison Fort Warren and for no other purpose. And the judge also excluded testimony to the effect that the adjutant general, at the time when he issued the governor's order to Captain Perry, intended thereby to issue authority to recruit one of these two particular companies; and testimony that Captain Perry's company was, at the time of the plaintiff's enlistment, commonly termed and known as a "coast defence company;" and also testimony that Captain Perry, after he had begun to recruit his company, but before the vote of the common council, stated publicly, in presence of members of that body, to men whom he was trying to enlist, that "the company was designed to be used for coast defence, and, although the government had power to send the men anywhere, yet it was as unlikely that it would be done as that the state house would be moved from its place." And he further refused to admit various documents from the official records of the governor, consisting chiefly of official correspondence between the governor and United States military and civil officers in the spring and summer of 1864, tending to show most of the facts in detail, the oral evidence of which had been thus excluded. And he ruled that, "the orders for the enlistment of Fayerweather's and Bemis's companies specifying that they were for coast defence, and the order for the enlistment of Perry's company being silent on that subject, the evidence that was offered by the defendants could not be introduced to show that the latter was being raised for coast defence."

A verdict was returned for the plaintiff; and the defendants alleged exceptions.

*G. F. Hoar & W. W. Rice*, for the defendants.

*J. L. Stackpole*, for the plaintiff.

WELLS, J. Assuming that the vote of the city council and the action of the mayor were equivalent to an offer of the bounty of one hundred and twenty-five dollars to all who should enlist in accordance with the terms of the order, the question is,

whether the plaintiff comes within those terms. The order contained the proviso " that no bounty shall be offered or paid to persons who have or may enlist in the companies now being raised for one year's service for coast defence." It is conceded that no such companies could be legally raised, under the laws of the United States, which would not be liable to be ordered at any time into general service; and that, unless properly raised and liable to general service, they could not be allowed upon the quota of the city. It also appears that in fact all three of the companies then being raised for one year's service were enlisted under the laws of the United States and were liable to be called into general service. U. S. St. 1862, *c.* 25, § 3.

It is argued on the part of the plaintiff that the Massachusetts statute of 1864, *c.* 120, authorized the payment of bounties as consideration for the service rendered by supplying the demand of the United States upon the city for men to fill its quota; that that consideration is furnished by any enlistment for which the city receives credit; and therefore that it is unjust and contrary to the spirit and purpose of the statute that the bounty should be refused to any soldier credited to the city, whose enlistment made him liable to be subjected to all the dangers and hardships of the general service; that at least the vote should be construed most strongly against the city and in favor of this view of the purpose of the statute.

But we cannot doubt that the statute is merely permissive; that it was intended to allow towns and cities full discretion whether to offer bounties, and to what amount and upon what conditions. It is strictly a bounty, and not compensation for services. The city might offer a large bounty for enlistments in one regiment or company, and a small one or none at all for enlistments in another. Where the character of the organization or its supposed destination was such as of itself to attract those who were otherwise liable to be drafted, the city may well be presumed to have considered that circumstance in the vote offering bounties for enlistments. This would be a sufficient reason for the adoption of the proviso withholding the proposed bounty from those who might enlist in such companies. The suggestion

that it was intended to guard against claims for bounty where the enlistment was not such as to afford the city a credit upon its quota, seems to have no foundation; because that had already been provided against by the terms of the order, by which the bounty was not to be payable until the volunteer should have been "mustered in, and duly credited to the quota of the city."

The proviso must be understood as applying to enlistments under the laws of the United States, credited to the quota of the city as such, and therefore involving liability to general service. It defines the companies that are to be excluded from the operation of the order, as those that are, 1st. "now being raised;" 2d. "for one year's service;" and 3d. "for coast defence." In the first and second particulars, all three companies conform alike to the description. In the third, neither company was, in a strict legal sense, within its terms. To relieve this ambiguity, developed by extrinsic facts, other extrinsic facts are to be resorted to. It appearing that the orders which issued from the state authorities for the enlistment of two of the companies specified that they were for coast defence, while that for Captain Perry's company, in which the plaintiff enlisted, did not contain that statement, the court ruled that that fact was conclusive upon the construction of the order of the city council, and excluded all other evidence to show that Perry's company was in fact equally intended and understood to be for the same service.

This ruling appears to us to be clearly wrong. We can perceive nothing in the order of the city council which should require or admit of a reference to the recruiting orders of the state authorities as conclusive upon its interpretation. Those recruiting orders could not give to the companies raised under them the legal character implied by their designation "for coast defence." We cannot see therefore that the fact of this designation in the recruiting orders stood upon any different footing from other facts which the defendant proposed to prove to aid in the interpretation of the vote of the city council.

In another respect we incline to think that the ruling of the court below was wrong. The recruiting order for Perry's

company specified that it was "to be attached to the First Battalion Heavy Artillery, Mass. Vols." By the aid of the other evidence offered, that service appears to have been as distinctly for coast defence as it could have been made if so designated in the order itself. Indeed the principal difference between the order to Perry and the others is, that, Perry having first applied for the authority, his order was absolute, and the particular service was assigned for his company; while the subsequent orders were contingent as to the acceptance of the companies that should be raised, and without designation of the particular part of the coast defence to which they would be assigned.

We are of opinion therefore that the recruiting orders did not warrant the distinction between the companies, which was drawn by the court below; and further, that, even if that distinction were well founded, the recruiting orders are not conclusive upon the question ; but the order of the city council is to be interpreted and applied by the light of all the facts which tend to show what companies were in fact embraced in the terms of the proviso. The defendants are therefore entitled to a new trial.

*Exceptions sustained.*